### BEATTY v. HEINER, Internal Revenue Collector.

(District Court, W. D. Pennsylvania. November 23, 1925.)

No. 3275.

1. **Pleading** ⊜160—**Under Pennsylvania Practice Act, affidavit of defense, raising questions of law, admits facts well pleaded.**

Under the Pennsylvania Practice Act (Pa. St. 1920, § 17200), affidavit of defense, raising questions of law, admits all facts well pleaded in statement of claim.

2. **Statutes** ⊜245—**Doubt as to meaning of taxing statute resolved in favor of taxpayer.**

Courts in construing taxing statutes should resolve doubts in favor of taxpayer.

3. **Internal revenue** ⊜7—**Annuity paid to legatee under will held not taxable income.**

Where will devised to legatee a certain annuity, and authorized executor or trustee to purchase such annuity from insurance companies, or to set aside investments sufficient to allow a net income equivalent thereto and to be used in payment thereof, which latter course was adopted, *held*, under Revenue Act 1918, §§ 210, 211, 212(a), 213 (Comp. St. Ann. Supp. 1919, §§ 6336⅛e–6336⅛ff), annuity so paid was not taxable income in legatee's hands.

4. **Internal revenue** ⊜38—**Income tax, voluntarily but erroneously paid, held recoverable.**

Income tax, voluntarily but erroneously paid, under Revenue Act 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.), on annuity received by taxpayer under will of another, *held* recoverable, in view of Revenue Act 1924, § 1014(a), being Comp. St. Supp. 1925, § 5949.

At Law. Action by Cora B. Beatty, executrix of the last will and testament of John W. Beatty, deceased, against D. B. Heiner, Collector of Internal Revenue. Conditional judgment for plaintiff.

Thorp, Bostwick, Stewart & Reed, of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

Before THOMSON and SCHOONMAKER, District Judges.

SCHOONMAKER, District Judge. [1] The defendant has filed an affidavit of defense under the Pennsylvania Practice Act (Pa. St. 1920, § 17200), raising questions of law. This affidavit is in lieu of demurrer under the old Practice Act, and admits all the facts well pleaded in the statement of claim.

The action is one of assumpsit, wherein the plaintiff, Cora B. Beatty, as executrix of the last will and testament of John W. Beatty, deceased, seeks to recover from D. B. Heiner, collector of internal revenue of the Twenty-Third district of the United States, an alleged overpayment of income tax for the year 1920 in the sum of $572.49. This sum is the computed tax on $5,000 returned by John W. Beatty as income in the year 1920, being that portion of his purported income for that year derived as an annuity under the will of Andrew Carnegie.

The plaintiff alleges that John W. Beatty erroneously included this $5,000 as income, when, as a matter of fact, it was a gift which under the income tax law was exempt from the federal income tax. It appears by the statement that Beatty filed a claim for refund of the said $572.49 with the Commissioner of Internal Revenue in accordance with the provisions of law, and at the same time filed an amended tax return for the year 1920, which omitted as income the $5,000 annuity from the Carnegie estate. On the 24th of October, 1924, the Commissioner rejected this claim for refund, and the plaintiff thereupon brought this suit.

The questions of law raised are: (1) Was this annuity gift received by John W. Beatty through the Carnegie will taxable income under the taxing statutes of the United States? and (2) Can this tax, having been voluntarily paid, now be recovered, even if this annuity gift was not taxable?

The annuity gift involved was paid to Beatty as legatee under the Carnegie will. The provisions of that will, in so far as they are material to the issue here, are as follows:

"5. I give to each of the persons hereinafter in this fifth article named an annuity of the annual amount in this fifth article set after his or her name, to be paid semiannually during the annuitant's life, that is to say,

to [here follows a list of over thirty-five annuitants, and one of them is 'Mr. Beatty, Art Department, wife succeeding, $5,000']."

"6. I direct my executor or trustee either to set apart, hold in trust, invest and keep invested, in separate funds, one for each annuitant, sufficient sums to produce by the clear net interest and income thereof respectively, the several annuities provided in the fifth article of this will, taking into account any changes in the list of annuitants which shall have been caused by death or by any codicil hereafter made by me and to pay the several annuities from the interest and income of the respective funds in semiannual payments, or to purchase such annuities in life insurance companies of good standing in the city of New York or elsewhere. Upon the termination of each annuity the principal of the fund held to produce such annuity shall be treated and disposed of as a part of my residuary estate."

"8. (2) I authorize my said executor and trustee, in its discretion, to retain for investment of the principal of any of the trusts, herein provided for, any of the securities left by me. * * *

"I authorize it to sell any of the securities, or other property coming into its hands, at public or private sale, and upon such terms as to time and manner of payment as it shall deem best.

"I authorize it to make new investments of the moneys coming into its hands in such securities as are sanctioned by the laws of the state of New York as proper investments for savings banks [here follows the designation of certain investments approved by the decedent which provision is undoubtedly intended to enlarge the rights of the executor and trustee with regard to the character of investments they might make]."

The executor under the Carnegie will, the Home Trust Company, elected not to purchase annuities from life insurance companies as authorized by paragraph 6 of the will, but instead elected, as authorized by paragraph 8 of the will, to set aside certain 5 per cent. United States Steel Corporation bonds belonging to the estate, the income on which was sufficient in amount to produce the annuity.

The Income Tax Act in force at the time of the return by Beatty and the payment of the income tax involved was the act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.). By the provisions of section 210 and section 211 of this act (Comp. St. Ann. Supp. 1919, §§ 6336⅛e, 6336⅛ee), normal and sur tax are levied upon the net income of every individual. By section 212 (a), being section 6336⅛f, Comp. St. Ann. Supp. 1919, the net income was defined as follows:

"Section 212. (a) That, in the case of an individual the term 'net income' means the gross income as defined in section 213, less the deductions allowed by section 214."

By section 213 (Comp. St. Ann. Supp. 1919, § 6336⅛ff), the term "gross income" is defined as follows:

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period."

By this section certain items are exempt from taxation under this law. Among these are the following found in section 213 (b) (3):

"(b) * * * (3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income)."

[2] As we approach this statute for the purpose of determining whether or not the annuity gift is within the terms of the statute, it must be noted first that in the construction of taxing statutes, it is the duty of the court, in case of doubt as to the meaning of words, to resolve that doubt against the government and in favor of the taxpayer. United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547. In that case, the Supreme Court held that a bequest made to the executor in lieu of his commissions as executor was not taxable income, but was exempt from tax under the Income Tax Act of October 3, 1913 (38 Stat. 114), which contained precisely the provisions of the act we are now considering.

On the other hand, the Supreme Court held, in the case of Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, decided

October 27, 1925, where there was a bequest of the income only of a fund left by the testator in trust, that bequest was taxable, because it was the gift of the income of the fund, and not a gift of the fund itself. That case considered the very act that we are here considering. Mr. Justice Holmes, delivering the opinion and after quoting the provisions of the act of 1918 applicable, said:

"The language quoted leaves no doubt in our minds that if a fund were given to trustees for A. for life with remainder over, the income received by the trustees and paid over to A. would be income of A. under the statute. It seems to us hardly less clear that even if there were a specific provision that A. should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the bequest might be said to be of the corpus for life; in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income property so called simply because of a severance between it and the principal fund. * * * But the distinction between the cases put of a gift from the corpus of the estate payable in installments and the present seems to us not hard to draw, assuming that the gift supposed would not be income. This is a gift from the income of a very large fund, as income. It seems to us immaterial that the same amounts might receive a different color from their source."

[3] Turning to the bequest in the instant case, we find that there is no bequest of income as income. There was an absolute gift of $5,000 each year, and the gift was not the income of any particular fund. It was an outright gift, regardless of the source from which it came. The duty of producing this annuity devolved upon the executor and trustee under the Carnegie will. Carnegie gave his trustee the option of producing this sum by purchasing an annuity in some life insurance company, or of producing it "by the clear net interest and income" from invested funds of the estate. This duty is placed upon the executor and trustee by paragraph 6 of the will. The bequest, however, was in no way dependent upon the income of any invested fund. The executor had the power either to use the funds of the estate to purchase securities or might hold the securities owned by the estate for the purpose. The trustee resorted to the latter, and set aside

certain bonds of the United States Steel Corporation held by the estate for the purpose of producing the necessary funds to pay this annuity, among others provided for in the will. Beatty had no interest in the investment of this fund. The providing of the necessary funds for this bequest was one entirely of internal management of the Carnegie estate, in which the trustee alone was interested. Beatty was entitled to his annuity, whether the securities produced the necessary funds to cover the annuity or not. The income derived from the invested funds, it seems very plain, was income only to the Carnegie estate. Its trustee was enjoined to see to it that the clear net interest was sufficient to cover the annuity. If, in the course of the investment of these funds of the Carnegie estate for the purpose of paying this bequest, among others, income was produced, that income was taxable only to the Carnegie estate. Congress seems to have foreseen this situation by providing in section 219 (Comp. St. Ann. Supp. 1919, § 6336⅛ii) that estates must make return of their income.

In the instant case, it is not necessary for the determination of the point at issue to ascertain whether or not this income was actually taxable as against the Carnegie estate, for here we have only to deal with the taxability so far as pertains to Beatty. As we consider this will of Andrew Carnegie, we have to deal here with the bequest of a fixed sum, which we regard as an absolute gift of a corpus, and not the income of a corpus, which was found to be taxable by the Supreme Court in the case of Irwin v. Gavit, supra. We therefore conclude that, within the plain language of the statute, the bequest to John W. Beatty, which he returned as income in his 1920 income tax return, was not in fact income, but was exempt from income tax, and that he erroneously paid the tax upon that income.

[4] This brings us to the second question raised. The return made by Beatty was voluntarily made, and the tax was paid without protest or without duress. Can he, under these circumstances, recover these taxes? Under ordinary circumstances, voluntary payments of money may not be recovered back, and were it not for the provisions of section 1014(a), title 10, of the Revenue Act of 1924 (Comp. St. Supp. 1925, § 5949), we would say that in the instant case this sum might not be recovered now by Beatty's executrix. The act of 1924, however, provides in reference to actions for the recovery of internal revenue tax alleged to have been er-

roneously assessed or taxed, "but such suit * * * may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress." In view of the provisions of this statute, we therefore conclude that this action may be maintained, and that the erroneously paid tax may be recovered.

We therefore decide against the defendant the questions of law raised by the affidavit of defense. The defendant may, within 15 days, file a supplemental affidavit of defense to averments of fact contained in the plaintiff's statement of claim, and in case of his failure so to do an order may be submitted for the entry of judgment herein in favor of the plaintiff and against the defendant for the sum claimed in the plaintiff's statement of claim, with interest, for the want of such affidavit.

THOMSON, District Judge, concurs in this opinion.